1899453

FILED
OCT 22 2003
MICHAEL GANS
CLERK OF COURT

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 02-3601

---

| | | |
|---|---|---|
| Michael Slusarchuk; Elaine Stebleton, individually and as trustee on behalf of the heirs of Jennifer Stebleton, | * | |
| Plaintiffs - Appellees, | * | Appeal from the United States District Court for the District of Minnesota. |
| v. | * | |
| Jon Hoff; Lance Faust, | * | |
| Defendants - Appellants. | * | |

---

Submitted: May 14, 2003

Filed: October 22, 2003

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

---

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and SMITH CAMP,[1] District Judge.

---

LOKEN, Chief Judge.

Rico Howard, fleeing Minneapolis Police Officers Jon Hoff and Lance Faust, ran a stop sign at high speed and struck a car in the intersection, seriously injuring Michael Slusarchuk and killing Jennifer Stebleton. Slusarchuk and Stebleton's heirs

---

[1]The Honorable Laurie Smith Camp, United States District Court Judge for the District of Nebraska, sitting by designation.

SCANNED
U.S. DISTRICT COURT DULUTH

filed this § 1983 action against the two police officers and the City of Minneapolis, asserting Fourth Amendment, substantive due process, and conspiracy claims. After defendants moved for summary judgment, plaintiffs abandoned their Fourth Amendment claims and their claims against the City. The district court denied the officers' motion for summary judgment on the substantive due process claims and the related conspiracy claims. Slusarchuk v. Hoff, 228 F. Supp. 2d 1007, 1018 (D. Minn. 2002). Officers Hoff and Faust appeal, arguing they are entitled to qualified immunity. We have jurisdiction over an interlocutory appeal of a qualified immunity denial, but at this summary judgment stage of the proceedings, we must accept as true the facts alleged by the nonmoving parties, appellees Slusarchuk and Stebleton's heirs. See King v. Beavers, 148 F.3d 1031, 1032-33 (8th Cir.), cert. denied, 525 U.S. 1002 (1998). We reverse.

I.

Suspicious of a car lingering at an intersection at 11:30 p.m. on August 22, 2000, officers Hoff and Faust shined an "alley light" into the car. Officer Faust recognized the driver, Rico Howard, and Officer Hoff thought he recalled an outstanding probable cause "pickup" on a man named Howard. The officers followed Howard briefly and then activated their squad car's emergency lights. Howard initially slowed and pulled toward the curb but then drove through a stop sign and continued on at approximately ten to twenty miles per hour. The officers activated their warning siren, but Howard did not stop. Instead, he ran two more stop signs and then accelerated, with the squad car in pursuit. A witness saw the two cars approach an intersection at fifty to sixty miles per hour. Two blocks later, Howard drove through another stop sign and collided with the car in which Stebleton and Slusarchuk were riding. Howard entered the intersection at about seventy miles per hour and did not brake prior to the collision. Stebleton was killed instantly. Slusarchuk suffered multiple injuries and is confined to a wheelchair for the rest of his life.

Howard pleaded guilty to second degree murder in state court. Slusarchuk and Stebleton's heirs then commenced this § 1983 action. In the district court, officers Hoff and Faust argued they are entitled to qualified immunity under County of Sacramento v. Lewis, 523 U.S. 833 (1998), a police pursuit case in which the Supreme Court held that intent to harm is the applicable substantive due process standard. Plaintiffs argued that the less onerous deliberate indifference standard applies, and alternatively that the officers evidenced the requisite intent to harm when they attempted to stop Howard while lacking probable cause to believe that criminal activity was afoot. The district court denied the officers' motion because "[a] reasonable jury could conclude that the officers' initial decision to stop a law-abiding Rico Howard amounts to the type of conduct to which the Supreme Court referred when recognizing that a § 1983 action is redressible in situations where an officer intends to worsen a suspect's legal plight." 228 F. Supp. 2d at 1017.

## II.

Qualified immunity shields government officials from damages liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Appellees' legal theory is that officers Hoff and Faust had no probable cause to stop Rico Howard, that they were guilty of racial profiling in attempting a stop, that Howard was legally justified in refusing to stop, that the officers improperly harassed Howard by pursuing him, and that appellees were injured as a "direct result" of this unconstitutional conduct. The theory is framed in Fourth Amendment terms, but as appellees belatedly recognized in the district court, their claims are not covered by the Fourth Amendment because the officers never succeeded in stopping Rico Howard. Pursuit reflecting an intent to stop "does not amount to a 'seizure' within the meaning of the Fourth Amendment." Lewis, 523 U.S. at 844, citing California v. Hodari D, 499 U.S. 621, 626 (1991). Thus, the qualified immunity issue turns exclusively on whether the officers violated

Slusarchuk's and Stebleton's right to substantive due process, as clearly established in Lewis and in this court's decisions construing and applying Lewis.

**A.** An initial problem arises because various Supreme Court justices have debated in recent years whether the touchstone of substantive due process liability is conscience-shocking official conduct, *or* conduct that violates a fundamental right deeply rooted in history and implicit in the concept of ordered liberty, *or both*. See Lewis, 523 U.S. at 860-62 (Scalia, J., concurring). In this case, the district court stated, and appellees argue on appeal, that the proper standard is whether there was an abuse of government power "that 'shocks the conscience' *or* interferes with rights implicit in the concept of ordered liberty." 228 F. Supp. 2d at 1015 (emphasis added). That was an error of law. Following Lewis, this court sitting en banc held that a substantive due process plaintiff "must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue) (citations omitted; emphasis in the original).[2]

**B.** Appellees argued, and the district court agreed, that officers Hoff and Faust would be guilty of conscience-shocking misconduct if a jury found that they attempted to stop Rico Howard based upon his race without probable cause or

---

[2]The district court's mistake is perhaps unsurprising. Even a recent panel opinion, Anderson v. Larson, 327 F.3d 762, 769 (8th Cir. 2003), stated that a substantive due process plaintiff must prove that "a defendant's conduct shocks the conscience *or* interferes with rights implicit in the concept of ordered liberty" (emphasis added; quotation omitted), citing for that principle three Eighth Circuit decisions prior to Moran v. Clarke. Judge Bye's opinion for the court en banc in Moran is the law of this circuit, not the subsequent panel opinion in Anderson.

reasonable suspicion that he was engaged in criminal activity. But this theory is fatally flawed. Appellees lacked standing to assert a § 1983 equal protection claim based upon their racial profiling allegation. See United States v. Hays, 515 U.S. 737, 743-44 (1995). Similarly, only Howard had standing to raise the Fourth Amendment issue of whether the attempted stop was constitutionally reasonable.[3] Slusarchuk and Stebleton were injured because Howard did not stop but fled at high speed. When Howard refused to stop, he committed a traffic violation and arguably a felony -- knowingly fleeing a police officer "acting in the lawful discharge of an official duty." MINN. STAT. § 609.487(3). At that point, the officers clearly had probable cause to pursue, and the subsequent injuries to Slusarchuk and Stebleton resulted from Howard's criminal flight. In these circumstances, those injuries were simply too remote a consequence to permit the imposition of substantive due process liability based upon the officers' initial decision to stop Howard. See Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Martinez v. California, 444 U.S. 277, 285 (1980).

**C.** Thus, the relevant question becomes whether officers Hoff and Faust are entitled to qualified immunity for their pursuit of Howard after he refused to stop. This question turns on the fault standard or level of culpability required to establish conscience-shocking conduct in a § 1983 police pursuit case. In Lewis, the Supreme Court held that "in a high-speed automobile chase aimed at apprehending a suspected offender . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience." 523 U.S. at 836. This court sitting en banc subsequently held "that the intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender." Helseth v. Burch, 258 F.3d 867, 871 (8th Cir. 2001) (en banc), cert. denied, 534 U.S. 1115 (2002).

---

[3]In the state court criminal proceeding, the court ruled that officers Hoff and Faust had an articulable reasonable suspicion to stop Howard.

Despite this settled law, appellees argue that the deliberate indifference fault standard applies to their substantive due process claims. They present the very argument we rejected in Helseth – that the deliberate indifference standard applies "whenever a judge or jury could say, with the wisdom of hindsight, that an officer engaged in a high-speed pursuit had ample time to deliberate." 258 F.3d at 871 (quotation omitted). As in Helseth, we reject this contention. The intent-to-harm standard applies to appellees' claims based upon the officers' pursuit of Howard.

**D.** Appellees argue that officers Hoff and Faust evidenced the requisite intent to harm in pursuing Howard because they did not have probable cause to stop him and therefore the pursuit was unrelated to a legitimate object of arrest. This contention is without merit. When Howard refused to stop after the officers activated their emergency lights, they had probable cause to arrest him for committing a felony in their presence, regardless of their initial reasons for the attempted stop. Thus, the pursuit was "aimed at apprehending a suspected offender" and did not objectively evidence "a purpose to cause harm unrelated to the legitimate object of arrest." Lewis, 523 U.S. at 836.

Alternatively, appellees argue that the officers are not entitled to qualified immunity because they intended "to worsen [Howard's] legal plight." Lewis, 523 U.S. at 854. The Court added this term the second time it stated its intent-to-harm holding in Lewis. Compare 523 U.S. at 836, with 523 U.S. at 854. The Court did not further explain what it meant by an intent to worsen legal plight, but the sentence was followed by footnote 13, which discussed a prior Fifth Circuit case involving alleged "intentional misuse" of a police officer's vehicle to terrorize a citizen. Checki v. Webb, 785 F.2d 534, 538 (5th Cir. 1986). We decline to read the term expansively, as appellees urge, because every police pursuit is intended to "worsen [the] legal plight" of the suspect by arresting him. Thus, a broad reading would eviscerate the intent-to-harm standard that the Court adopted, at least in part, to sharply limit substantive due process liability. Rather, we construe the term as applying only to a

narrow category of pursuits that reflect a conscience-shocking motive beyond the realm of legitimate government action but do not involve an intent to inflict physical harm. The pursuit in this case reflects no such motive. Therefore, officers Hoff and Faust are entitled to qualified immunity for their conduct in pursuing Howard to arrest him for criminal flight.

**E.** In Count III of their complaint, appellees allege that officers Hoff and Faust conspired to violate Slusarchuk's and Stebleton's civil rights, including their substantive due process rights. Absent a constitutional violation, "there is no actionable conspiracy claim." Cook v. Tadros, 312 F.3d 386, 388 (8th Cir. 2002). Accordingly, the officers are also entitled to qualified immunity from appellees' substantive due process conspiracy claims. See Pfannstiel v. City of Marion, 918 F.2d 1178, 1188 (5th Cir. 1990).

The October 31, 2002 order of the district court is reversed insofar as it denied officers Hoff and Faust qualified immunity from appellees' substantive due process damage claims and their related § 1983 conspiracy claims.

BRIGHT, Circuit Judge, concurring.

In this case a catastrophe occurred. Jennifer Stebleton and Michael Slusarchuk drove into the path of a high-speed chase. Stebleton died at the scene. Slusarchuk sustained serious injuries, leaving him a paraplegic. Rico Howard, who fled police officers, stands convicted of second degree murder. This chain of events started when two Minneapolis Police Officers, Jon Hoff and Lance Faust, incorrectly believed a probable cause pick-up existed for Rico Howard. At the time officers recognized Howard, he had not committed any crime.

Slusarchuk and Stebleton's heirs sought compensation for alleged violations of their constitutional rights against the police officers. The district court determined

that "[a] reasonable jury could conclude that the officers' initial decision to stop a law-abiding Rico Howard amounts to the type of conduct to which the Supreme Court referred when recognizing that a § 1983 action is redressible in situations where an officer intends to worsen a suspect's legal plight." (Add. at 19-20).

Precedent does not support the decision of the district judge. Because in this case under this court's decision, the officers need not explain or account for their actions to Slusarchuk and Stebleton's heirs in federal court. Thus, I add my additional comments to the opinion of the court.

While I join in the opinion, I emphasize Chief Judge Loken's statement in Helseth v. Burch, 258 F.3d 867 (8th Cir. 2001), that cases of this kind may call for a legislative remedy. Helseth addressed another high-speed police pursuit case, resulting in the death of an innocent bystander. Chief Judge Loken wrote: "Society could reasonably decide that an innocent bystander injured during such high-speed police pursuits should be compensated from the public coffers. But that is a legislative decision." Id. at 872 (noting that under Minnesota law a police officer has official immunity from claims for injuries resulting from engaging in and continuing a high-speed pursuit, citing Pletan v. Gaines, 494 N.W.2d 38, 41 (Minn. 1992)).

High-speed pursuits by police, while sometimes justified by the circumstances, may in many other cases be an unwise police maneuver posing high risk of injury or death to the public as well as participants in the chase. I believe that in cases of improper police conduct in highway motor vehicle chases, state law, not federal law, should provide for an appropriate remedy to innocent victims, such as the victims in this case.

With the above comments, I join in the opinion of this court.

---